[Civ. No. 21524. Second Dist., Div. Three. June 29, 1956.]

Estate of ANDREW PRALL CLAUSONTHUE, Deceased. NORMAN CAMERON CLAUSONTHUE, Individually and as Trustee, Appellant, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES et al., Respondents.

Hanley & Lawrence, Robert R. Hanley and Lewis D. Lawrence for Appellant.

John P. Hoffman and Rinehart, Merriam, Parker & Berg for Respondents.

SHINN, P. J.—This is an appeal from an order settling the final account of coexecutors, decreeing distribution of a deceased's estate and dismissing exceptions to the account, and a purported appeal from an order denying appellant leave to file amended exceptions to the account.

The respondents, Security-First National Bank of Los Angeles and Donald John Clausonthue, as coexecutors, filed their report, first and final account, and petition for construction of will and for final distribution of the estate of Andrew Prall Clausonthue, deceased.

The exceptions charged that the executors had failed to account for $19,537.38 in two savings and loan association accounts, and in a commercial and savings bank account; at the death of the decedent these moneys were in his name and in the name of respondent, Donald Clausonthue, son of decedent, as joint tenants. By the exceptions appellant sought to charge the executors with four sums of money, namely: A savings account with Pasadena Savings and Loan Association, $6,297.68, a commercial account with Security-First National Bank $2,771.68, a savings account in Security-First National Bank $5,082.40, and a savings account in First Federal Savings and Loan Association of Altadena $5,385.62, these being the accounts decedent placed in joint tenancy with Donald. The effect of the order settling the account and for distribution was that Donald succeeded to the accounts as the surviving joint tenant with his father. The property of the estate that remained for distribution was valued at $5,346.

It was alleged in the exceptions that decedent had executed a will on August 2, 1949 and upon information and belief that the joint tenancies were created by decedent "with the intention that upon the death of the decedent the transferee should distribute said property in accordance with the terms and provisions of his said Will; . . . the decedent was under the mistaken notion and belief that said property, by reason of his having named his said son Donald as one of the coexecutors of his Will, would, upon the death of the decedent, be acquired by his said son Donald, not individually, but as such co-executor; and that as such co-executor said son would be by law obliged to distribute the same in accordance with said Will." The substance of these allegations was that the joint tenancies were created as a result of mistake. There was no allegation of a confidential or fiduciary relationship and no charge of the exercise of undue influence. The excep-

tions were heard by the court on March 1, 1955, and on the trial appellant offered evidence to sustain the same. At the conclusion of appellant's case, the executors moved to dismiss the exceptions, viz., moved for a nonsuit on the ground there was no evidence that decedent created the joint tenancies under mistake as to their legal effect and no evidence that he intended the interests of Donald to be held in trust. Appellant's counsel then moved orally to amend the exceptions to conform the pleadings to the proof. It is sufficient to say at this point that the proposed amendment alleged the existence of a confidential relationship between Donald and decedent and accused Donald of having exercised undue influence and fraud in the creation of the joint tenancies. The court took the motions under submission and fixed the time for filing briefs. Appellant gave written notice of a motion for leave to file amended exceptions. On August 11, 1955, the court denied the motion to amend, granted respondents' motion to dismiss the exceptions, and thereupon approved and settled the account and ordered distribution.

The court first denied leave to amend the exceptions which was sought upon the ground that the amendment would conform the exceptions to the proof. Secondly, the court, having denied the motion to amend, granted a nonsuit for the reason there was no evidence whatever to sustain the allegations of the exceptions. It is necessary to review the evidence upon which these rulings were made.

The evidence of appellant consisted of testimony given by Donald and his wife, called as witnesses under section 2055 of the Code of Civil Procedure, and that of certain other witnesses, together with some documentary evidence. Mr. McEachren, vice-president of the First Federal Savings and Loan Association, Mr. Milholland, assistant manager of a branch of the Security-First National Bank, Ruth McKirby, a clerk of the same bank, Louise McAllister, secretary of the Pasadena Savings and Loan Association, were called as witnesses and produced the records of the institutions which evidenced the creation of the joint tenancies. John P. Hoffman, an attorney, testified as to the execution of a will by the decedent. All the joint tenancies were created by writings on printed forms of the institutions, which are customarily used and are adequate for that purpose. The writing which placed in joint tenancy the account with the Pasadena Savings and Loan Association was executed January 9, 1947; the account with First Federal Savings and Loan Association was

placed in joint tenancy January 7, 1948. On each of these occasions decedent took Donald to the Oak Knoll branch of the Security-First National Bank where he was made a cosigner on decedent's signature card for a safe deposit box. In April 1953, Donald, at decedent's request, brought some stock certificates from the safe deposit box to decedent. These were endorsed and given to Donald who had the shares transferred to himself and his wife jointly (title to this stock is not questioned). At approximately the same time decedent and Donald executed joint tenancy signature agreements upon the bank's cards by which the accounts in the Security-First National Bank were placed in joint tenancy. The witnesses were examined at length as to the circumstances under which the several instruments were executed.

The father died August 4, 1953. He was born in England in 1862, came to this country in 1903 with his wife and two sons. In 1936 Donald came to California where he married his present wife. Decedent came to live with them in 1938 and he continued to live with them to the time of his death. He had a pension of $297 per month. He paid his son $50 a month to apply on their living expenses. His wife died in January 1947 and it was shortly after that when decedent conceived the desire to place some of his properties in joint tenancy. Donald is 64; Norman, who is somewhat younger, lives in Oak Park, Illinois. Soon after coming to this country decedent became assistant controller of the Brooklyn-Manhatten Transit Corporation, was employed in similar capacities by various railroads and for over 35 years of his active business experience was engaged in accounting and financial work. He handled his own business affairs and kept them to himself. He made regular monthly deposits in the accounts. He did not discuss them with Donald except upon the occasions when he made arrangements to dispose of his holdings in the manner heretofore indicated. Donald made no inquiries and had no knowledge as to the sums involved in the accounts.

Decedent made a will August 25, 1949, which was prepared by Mr. Hoffman. By it he left his automobile, jewelry and other personal property to Donald, if living, and, if not, to Norman. To Donald he left all stocks, bonds, other securities and any real property he owned, provided Donald survived him and, if not, to Donald's wife. He left $2,000 to Norman in trust for Norman's two boys. He forgave any debts his sons might owe him and the residue of his estate he left 60 per cent to Donald and 40 per cent to Norman, or to the living

issue of either who might predecease him. Donald and Se-curity-First National were named as executors, the son to act without bond. It was in evidence that after the death of the testator Norman wrote to Donald making inquiry as to the various accounts and that Donald did not reply until after Norman had again made inquiry.

█ There was no evidence that Donald or anyone else solicited or advised or encouraged decedent to create the joint tenancies. There was no evidence that decedent acted under any misapprehension or want of understanding as to the contents of the several writings which he executed nor as to their meaning and legal effect. There was no evidence of any activity on the part of Donald in connection with the creation of the joint tenancies nor any evidence that Donald at any time was consulted by decedent with respect to or that he volunteered any advice concerning matters of business.

Two questions are presented for decision, namely, whether appellant produced any substantial evidence in support of his exceptions and also whether it was an abuse of discretion for the court to deny his motion for leave to amend his exceptions by adding thereto a charge of undue influence.

Considering the allegations of the exceptions and the evidence pertaining thereto, which were challenged by respondent's motion, it is manifest there was an entire want of evidence to establish that decedent acted under a mistake as to the legal effect of the joint tenancy agreements or to prove the allegation that he intended to create joint tenancy interests in Donald merely as trustee for his estate. Appellant had created specific issues to be tried, had endeavored to sustain his allegations and had failed. It would have been error to decide those issues in his favor.

The second question is whether it was an abuse of discretion to deny appellant leave to amend the exceptions. As we have said, the exceptions did not charge the exercise of undue influence by Donald. They did not allege that decedent was not in full possession of his faculties nor that he was given to consult with or rely upon the advice of Donald nor that the latter had any influence over him. The only relationship alleged was that of father and son. █ Of course, the mere allegation that in a transaction between father and son one derived an advantage or profit is not an accusation of the use by him of undue influence. The proposed amendment alleged that decedent often advised and consulted with Donald, suffered a gradual deterioration of his mental and

physical powers, came to be dependent upon Donald; Donald knew that his father was intending to create a trust as to Donald's joint tenancy interest and knowing that his father had that intention Donald failed to advise him as to the effect of the joint tenancy agreements; he had a duty to advise his father as to the significance of the agreements and a duty to see that his father received independent legal advice and that he failed in all those duties. It was alleged that said acts and omissions of Donald were fraudulent. In other words the amended exceptions in addition to accusing Donald of using undue influence also accused him of fraud.

■ Appellant did not seek to have his case reopened for further evidence if his amendment should be permitted. It was his theory that the evidence he had introduced was sufficient to establish the truth of the allegations of the amendment. By his application to amend to conform to the proof he submitted to the court the question whether in the judgment of the court the evidence would support his allegations of the use of undue influence and fraud. Upon this question the court during argument on the motions expressed itself freely and in part as follows: "In the first place, I don't think there is any showing of any fraud as far as the son is concerned, the son executor. I don't think there is any showing of any undue influence on his part. So that I think, as far as your confidential relationship is concerned, it would avail the opposition nothing, because there is no evidence of any undue influence. I think the whole thing was a voluntary proposition on the part of the decedent. . . . I don't think there is any showing that anything out of line took place in the creation of these joint tenancies. I think they are, on their face, legitimate. I think they were the desire of the decedent. It was his desire to have them set up that way. Frankly, I don't see where there is any basis upon which the court can set aside these joint tenancies." The court proceeded to state the belief that the provision that was made for Donald was a natural one in view of the fact that he had taken care of his father and mother in his home for the last eight or ten years of their lives. These remarks of the court were made in reply to the argument that the amendment should be allowed because the evidence was sufficient to prove the allegations of undue influence and fraud. Inasmuch as there was no evidence of the actual use of influence by Donald, appellant could claim only that the facts in evidence established the existence of a confidential relation-

ship which gave rise to a presumption of the use of undue influence, and that the existence of a confidential relationship alone necessitated allowance of the amendments even if the court was convinced from the entire evidence that decedent conceived and executed the plan to place the accounts in joint tenancy free from any outside influence or advice.

Appellant's motion was addressed to the discretion of the court and we are unable to discover in the denial any basis for a claim of abuse of discretion. It was the expressed judgment of the court that the evidence to which appellant sought to conform his pleading was insufficient to justify findings in accordance with the allegation of the amendment. In reaching this conclusion the court properly took into consideration all the evidence and not merely such parts of it as may have been favorable to appellant. If perchance, notwithstanding the court's conclusions as to the factual questions, it had nevertheless permitted the amendment to be filed, the course of the trial thereafter would have been that respondents, knowing the facts had been decided contrary to the allegations of the proposed amendment, would have submitted the case on the merits, and the findings would have been in accordance with the court's announced factual conclusions.

The rule invoked by appellant that it is error to grant a motion for nonsuit if the evidence of the party resisting the motion would warrant a judgment in his favor has application here only to the extent that if the evidence of appellant had furnished substantial support for the allegations of his exceptions of mistake on the part of decedent or the existence of some undisclosed purpose or understanding with respect to the creation of a trust a nonsuit should not have been granted. The nonsuit was properly granted upon the ground of failure of plaintiff's proof to sustain those allegations.

Appellant discusses the evidence at some length but his argument consists only of inferences of fraud and the use of undue influence which he contends might have been drawn from the evidence, all of which are directly opposed to the inferences drawn by the trial court, as quoted earlier in our opinion. ▮ He says the court could have disbelieved Donald's testimony that he did nothing to induce his father to create the joint tenancies but, even so, doubt as to whether Donald was telling all he knew would not be evidence of what he was withholding. It would not be affirmative evidence of

activity upon his part. (*Estate of Stone,* 59 Cal.App.2d 263, 268 [138 P.2d 710].)

Decedent had a right to reward Donald for favors received during the many years he and his wife had lived in Donald's home. He had an income that would have enabled them to live elsewhere, but he was content to stay on. It is but just that a child who provided a home for aged parents and cares for them for many years should be rewarded. It is for the parents to determine the measure of their obligation and it is their right to express their feelings of appreciation and love in tangible form. Their wishes are not to be defeated upon trivial grounds, certainly not upon the sole ground of blood relationship.

The court concluded there was no fraud or undue influence or activity on Donald's part and that he had not been unduly rewarded. Having determined that the facts were contrary to the allegations of the proposed amendment it would have been futile to allow it to be filed.

Granting that Donald had ample opportunity, and perhaps the ability, to influence his father's decisions this was not sufficient to establish the invalidity of the joint tenancies. (*Estate of Bould,* 135 Cal.App.2d 260, 273 [287 P.2d 8, 289 P.2d 15].) It is not questioned that if they were validly created Donald took title as surviving joint tenant.

The order is affirmed; the purported appeal from the order denying leave to amend is dismissed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied July 24, 1956, and appellant's petition for a hearing by the Supreme Court was denied August 21, 1956. Gibson, C. J., and Carter, J., were of the opinion that the petition should be granted.